J-S76018-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ALBERT THEODORE GREELEY, III | |
| Appellant | No. 835 WDA 2014 |

Appeal from the PCRA Order April 24, 2014
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0000133-2009

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA, J., and OLSON, J.

MEMORANDUM BY PANELLA, J.                    **FILED FEBRUARY 11, 2015**

Appellant, Albert Theodore Greeley, III, appeals from the order entered by the Honorable Joseph M. George, Jr., Court of Common Pleas of Fayette County, that denied his petition filed pursuant to the Post Conviction Relief Act ("PCRA").  After careful review, we affirm.

According to Greeley, the underlying factual predicate of this appeal is undisputed.  *See* Appellant's Brief, at 3.

> On October 30, 2008, Trooper James Pierce observed Greeley operating a vehicle he later confirmed to be a vehicle owned by another [person.]  Pierce testified he initially approached Greeley "because he knew" Greeley did not possess a valid driver's license.
>
> Upon stopping behind Greeley's vehicle to purportedly investigate why Greeley was operating a vehicle without a driver's license and also to determine who was the owner of the vehicle, Greeley identified to the trooper that the vehicle was owned by James Silbaugh.  The trooper requested proof of

ownership and Greeley opened the passenger side of the vehicle whereupon Trooper Pierce smelled burnt marijuana emanating from inside the vehicle.

Trooper Pierce was given permission by Greeley to conduct a pat-down search of his person, wherein, Pierce discovered a small quantity of marijuana inside Greeley's pants pocket. Almost immediately thereafter, Greeley's mother-in-law and father-in-law, Darnice and Dennis Sykes, arrived at the scene. Greeley's mother-in-law walked over to Greeley and gave him a hug.

Pierce "pulled Greeley away from Mrs. Sykes" and noticed he was "holding a wad of cash in his left hand." … After separating Greeley away from Mrs. Sykes, another vehicle arrived at the scene and Mrs. Sherry Silbaugh (the wife of the putative owner of the vehicle) was approached by the trooper to obtain consent to search the vehicle Greeley had been operating.

As a result of the vehicle search, Pierce recovered from the enclosed vehicle console a plastic baggie containing a white powder later confirmed to be cocaine. The seized vegetable matter recovered from the Greeley's pants pocket was also confirmed to be marijuana.

At trial, Corporal Dennis Ulery of the Pennsylvania State Police was qualified as an expert witness. Corporal Ulery provided his opinion that the cocaine was possessed by Mr. Greeley, … with the intent to deliver for sale. … Based upon the Corporal's experience in narcotics investigations, the cash "possessed by Greeley was indicative of a drug dealer's 'stack.'" Corporal Ulery cogently testified that he was not aware that when Trooper Pierce initially patted down Greeley, Pierce did not "feel" the wad or stack of cash. Corporal Ulery also testified he was not aware of where the cocaine was located, once discovered, by Trooper Pierce.

During the course of the trial, the Commonwealth failed to produce the actual funds or wad of cash attributed to Greeley and attributed by Ulery as what "drug dealers" possess incident to distribution activity. Instead, the Commonwealth produced photographs of the cash.

> During the trial, Trooper Morrison was allowed to testify regarding the cash allegedly obtained from Greeley, in response to whether any DNA evidence was obtained from the cash, that the cash "went to forfeiture."

Appellant's Brief, at 3-5 (citations omitted). Despite a previous mistrial in this matter due to testimony that the cash had gone to forfeiture, defense counsel did not request a mistrial, and instead requested a curative instruction to the jury.

At the conclusion of the trial, the jury found Greeley guilty of possession of marijuana, and possession of cocaine with the intent to deliver. This Court subsequently affirmed the judgment of sentence, concluding that the evidence at trial was sufficient to sustain both convictions, and that Greeley's request for a new trial due to the testimony that the money had gone to forfeiture was waived.

Shortly thereafter, Greeley filed a *pro se* PCRA petition. The PCRA court appointed counsel, and an amended PCRA petition was filed. After holding hearings on the amended petition, the PCRA court denied Greeley's petition. This timely appeal followed.

On appeal, Greeley purports to raise only two issues, the ineffectiveness of trial counsel and the ineffectiveness of appellate counsel. However, each of these issues is actually merely an umbrella statement for a myriad of ineffectiveness claims for each counsel.

"Our standard of review of a trial court order granting or denying relief under the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." ***Commonwealth v. Barndt***, 74 A.3d 185, 191-192 (Pa. Super. 2013) (citation and internal quotation marks omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Id***. (citation omitted). The PCRA court's credibility determinations are binding on this Court, where there is record support for those determinations. ***See Commonwealth v. Timchak***, 69 A.3d 765, 769 (Pa. Super. 2013).

To establish ineffectiveness of counsel, "a PCRA petitioner must show the underlying claim has arguable merit, counsel's actions lacked any reasonable basis, and counsel's actions prejudiced the petitioner." ***Commonwealth v. Jones***, 71 A.3d 1061, 1063 (Pa. Super. 2013) (citation omitted), ***appeal denied***, 84 A.3d 1062 (Pa. 2014). Moreover, "[w]e presume counsel is effective and place upon Appellant the burden of proving otherwise." ***Commonwealth v. Springer***, 961 A.2d 1262, 1266-1268 (Pa. Super. 2008) (citation omitted). Regarding the second requirement, if a reasonable basis exists for the particular course chosen by counsel, the inquiry ends and counsel's performance is deemed constitutionally effective. ***See Commonwealth v. Lauro***, 819 A.2d 100, 106 (Pa. Super. 2003). "Prejudice means that, absent counsel's conduct, there is a reasonable probability the outcome of the proceedings would have been different." ***Id***.

(citation omitted). Failure to satisfy any prong of the test requires that the claim be dismissed. **See Commonwealth v. O'Bidos**, 849 A.2d 243, 249 (Pa. Super. 2004).

With these standards in mind, we have reviewed the appellate briefs and certified record on appeal and conclude that the well-written opinion of Judge George thoroughly and adequately addresses the issues raised by Greeley in this appeal. **See** Trial Court Opinion, 4/24/14, at 7-18. We therefore affirm on the basis of the PCRA court's opinion.

Order affirmed. Jurisdiction relinquished.

PJE Ford Elliott joins in the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/2015

IN THE COURT OF COMMON PLEAS OF
FAYETTE COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,  :  CRIMINAL ACTION

v.                    :  CASE NO. 133 OF 2009

ALBERT T. GREELEY, III,        :

     Defendant/Petitioner.    :  JUDGE JOSEPH M. GEORGE, JR.

_____:

**ATTORNEYS AND LAW FIRMS**

Anthony S. Iannamorelli, Jr., Esquire, Assistant District Attorney, *For the Commonwealth*

Herbert A. Terrell, Esquire, *For the Defendant/Petitioner*

# OPINION AND ORDER

GEORGE, J.                                  April 24, 2014

This matter comes before the Court on Defendant/Petitioner's [hereinafter, "Petitioner"] Amended Petition under the Post Conviction Relief Act ("PCRA"). Petitioner claims ineffective assistance of his private counsel at trial and appointed counsel on appeal. Because Petitioner's evidence fails to meet the statutorily prescribed standards for ineffective assistance of counsel, the Petition must be denied.

## ISSUES PRESENTED

Petitioner asserts that no reliable adjudication of his guilt or innocence could have taken place because trial counsel:

    a. Elected not to call all fact witnesses;

1

b. Accepted the trial court's curative instruction, rather than making a motion for mistrial when, during cross-examination, the Commonwealth's witness referred to money taken from Petitioner as having been taken by the forfeiture department;

c. Failed to object to the submission of demonstrative evidence, consisting of photographs of the money seized at the time of Petitioner's arrest;

d. Failed to object to the Commonwealth's qualified expert testimony on amounts of money and drugs as indicators of Petitioner's intent, when no related expert report was provided in discovery; and

e. Failed to request the standard jury instruction on expert witness testimony.

Petitioner likewise asserts that no reliable adjudication of his guilt or innocence could have taken place because appellate counsel:

a. Failed to communicate with Petitioner directly, relying instead on his written correspondence;

b. Decided not to argue all errors desired by Petitioner on direct appeal; and

c. Failed to file a petition for allowance of appeal ("PAA") with the Supreme Court of Pennsylvania.

STATEMENT OF THE CASE

On October 6, 2011, a jury found Petitioner guilty on two counts of violating the Controlled Substance, Drug, Device and Cosmetic Act.[1] Said verdict resulted from the Commonwealth's second attempt to convict Petitioner. The first attempt was declared a mistrial by Judge Gerald R. Solomon after a Commonwealth witness gave detailed testimony that money seized from Petitioner's person at the time of his arrest had gone to asset forfeiture.

---

[1] 35 Pa.C.S. §§ 780-113(a)(30) and (a)(31).

2

The case was reassigned to Judge Ralph C. Warman, who presided over Petitioner's second trial and sentence. The instant Petition was assigned to this Court, whereupon we conducted an evidentiary hearing and heard argument on February 19 and March 18, 2014.[2]

Petitioner retained Attorney Paul Iannetti for the second trial. Petitioner claims Mr. Iannetti was ineffective before and during trial. Attorney Iannetti entered his appearance on June 30, 2011, approximately three months before the second trial. Given the case history, he decided it was inappropriate to file additional pretrial motions.[3] Nevertheless, Mr. Iannetti recalled advising Petitioner, performing background investigation, speaking to his mother, and reviewing case-related documents.[4]

Following the verdict, Mr. Iannetti recalled that Petitioner did not indicate a desire to appeal or file post-trial motions. Shortly before Petitioner's time to appeal lapsed, Mr. Ianetti was permitted to withdraw.

Petitioner failed to take a direct appeal, and filed a *pro se* PCRA Petition on December 22, 2011. No hearing on that motion was held. Petitioner's newly appointed counsel, Dianne Zerega, filed a petition for leave to appeal *nunc pro tunc*, which was granted by Order dated February 27, 2012. Ms. Zerega filed a timely

---

[2] By agreement of the parties, the taking of testimony and evidence was bifurcated as between Petitioner's potential fact witnesses and his trial and appellate counsel.
[3] The Court notes that such motions were filed prior to the first trial.
[4] Petitioner raises inadequate trial preparation in his claims of ineffectiveness. We credit Mr. Iannetti's testimony concerning his pre-trial investigation. His awareness of all the witnesses that Petitioner presented to this Court during the PCRA hearing, and his decision not to file additional motions, as discussed, demonstrates that Petitioner's claim lacks merit.

3

brief on January 24, 2012. Petitioner contends that Attorney Zerega was ineffective in her preparation and execution of his appeal.

On February 21, 2013, the Superior Court affirmed Petitioner's conviction and sentence. Petitioner attempted to contact Attorney Zerega to no avail. At some point before expiration of the time to file a PAA, Attorney Zerega advised Petitioner's mother that further appellate review was without merit. Consequently, no PAA was filed.[5]

Attorney James Natale was appointed conflicts counsel on Petitioner's post-conviction matters. On April 29, 2013, Petitioner filed a *pro se* motion to amend his original PCRA Petition. Mr. Natale filed a motion to withdraw and a no merit brief on September 6, 2013. The Court allowed Mr. Natale to withdraw, but granted Petitioner's motion to amend. Petitioner retained Attorney Herbert A. Terrell, who filed the instant Amended Petition on October 16, 2013.

## DISCUSSION

### Standard of Review

To be eligible for relief under the PCRA, Petitioner must plead and prove by a preponderance of the evidence

> [t]hat the [challenged] conviction or sentence resulted from one or more of the following:
>
> (i)    A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-

---

[5] For jurisdictional purposes, we note that failure to take an appeal within the prescribed time limits constitutes exhaustion of direct appeal remedies under the PCRA. *See* 42 Pa.C.S. § 9545(b)(3).

4

determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii)     Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(iii)    A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

(iv)     The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

(v)      Deleted.

(vi)     The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

(vii)    The imposition of a sentence greater than the lawful maximum.

(viii)   A proceeding in a tribunal without jurisdiction.

42 Pa.C.S. § 9543.

The ineffective assistance delineated in § 9543 encompasses "all constitutionally-cognizable claims of ineffective assistance of counsel, i.e., all claims that the petitioner was deprived of his or her Sixth Amendment[6] and Article I,

---

[6] United States Constitution

5

Section 9[7] rights to counsel." *Com. ex rel. Dadario v. Goldberg*, 773 A.2d 126, 130 (Pa. 2001).

> To prevail on a claim alleging counsel's ineffectiveness under the PCRA, [Petitioner] must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness, i.e. there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different.

*Com. v. Bracey*, 795 A.2d 935, 942 (Pa. 2001) (citation omitted); *see Com. v. Busanet*, 817 A.2d 1060, 1066 (Pa. 2002) (applying the same standard in rebutting the traditional presumption of counsels' effectiveness). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Busanet*, 817 A.2d at 1066.

In addition, where it is clear that a petitioner "has not met the prejudice prong of the ineffectiveness standard, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met." *Com. v. Travaglia*, 661 A.2d 352, 357 (Pa. 1995) (citing *Strickland v. Washington*, 466 U.S. 668, 697 (1984)).

To demonstrate the reasonable probability of prejudice, "a [petitioner] is required to show that counsel's ineffectiveness was of such magnitude that the verdict would have been different absent counsel's alleged ineffectiveness." *Com. v. Cox*, 728 A.2d 923, 930 (Pa. 1999) (internal citation and quotation omitted); *see Com.*

---

[7] Pennsylvania Constitution

6

*v. Howard*, 645 A.2d 1300, 1307 (Pa. 1994) (clarifying that, in the context of prejudice, "reasonable probability" should not be confused with lesser standards).

Finally, regardless of the prong addressed, counsels' actions "cannot be evaluated in hindsight but must be examined in light of the circumstances at the time." *Com. v. Hardcastle*, 701 A.2d 541, 547 (Pa. 1997). Only those actions "'so unreasonable that no competent lawyer would have chosen [them]'" will support an ineffective assistance claim. *Com. v. Ervin*, 766 A.2d 859, 862-63 (Pa. Super. Ct. 2000) (quoting *Com. v. Miller*, 431 A.2d 233, 234 (Pa. 1981)).

This Court's denial of post-conviction relief may be affirmed if it is "supported by the evidence of record and . . . free from legal error." *Com. v. Brooks*, 875 A.2d 1141, 1144 (Pa. Super. Ct. 2005) (citation omitted). Affirmance is also appropriate upon any independent basis. *See Brooks*, 875 A.2d at 1144.

## 1. Trial Counsel

### Decision Not to Call All Fact Witnesses

Mr. Iannetti elected not to present all available fact witnesses. Though he was aware of these witnesses, he stated that the uncalled individuals were either unhelpful or harmful to Petitioner's case.[8] Petitioner contends that choice rendered Mr. Iannetti ineffective.

Petitioner presented two such fact witnesses[9] that he contends should have been called during trial. The first was Ms. Darneise Sykes, the grandmother of

---

[8] *See supra* note 4.

[9] Petitioner argues that a third witness, Keisha Deberry, would have provided testimony concerning the origin of the large sum of money seized from Petitioner. Pet.'s Br. Supp 9 n. 2. However, that witness having never been presented to the Court, we are without a credible basis to note whether

7

Petitioner's daughter. Though Ms. Sykes was not a witness at Petitioner's trial, she was the subject of testimony. PSP Trooper Charles Morrison testified that Ms. Sykes gave Petitioner a hug as he was about to be arrested, whereupon Trooper Morrison observed Petitioner hand Ms. Sykes a significant quantity of money.

Ms. Sykes testified that Petitioner often gave money to assist in payments for his child's private schooling. Ms. Sykes testified on cross-examination that Petitioner's only job was as a dishwasher at Denny's Restaurant. She further stated that Mr. Iannetti never contacted her for any purpose.

Regarding Ms. Sykes, the absence of her testimony is not a basis for prejudice upon which the result of the trial would have differed. In particular, the fact that Petitioner often gave Ms. Sykes money and Ms. Sykes' testimony of Petitioner's position at Denny's Restaurant, in conjunction with the Commonwealth's evidence of the $6,000 seized[10], was more likely to increase the suspicion that Petitioner was engaged in illegal activity.

The second witness was Ms. Sherri Silbaugh, Petitioner's cousin. We find that Ms. Silbaugh's prospective testimony was not credible. Even accepting the substance of her testimony as true, it amounted to the following: On the day of Petitioner's arrest, Ms. Silbaugh, by her own admission, was addicted to various controlled substances.[11] To that end, it was the practice of her and her husband to

---

Petitioner satisfies any of the requirements for ineffective assistance of counsel. *See Com. v. Lauro*, 819 A.2d 100, 105 (Pa. Super. Ct. 2003) (setting forth the necessary elements).
[10] *See supra* note 9.
[11] "cocaine, crack, whatever...."

8

loan out her husband's personal vehicle in exchange for drugs or money to be used for drugs.

Ms. Silbaugh testified that Petitioner, not having a car himself, phoned Ms. Silbaugh to borrow the vehicle so that Petitioner could pick up his daughter at school. Ms. Silbaugh further stated that, upon learning that the vehicle had been pulled over, she gave the police her written consent to search the same. Despite her earlier admission, she claimed that Petitioner never gave her drugs, or anything for that matter, in exchange for use of the vehicle. Accordingly, we are of the opinion that Ms. Silbaugh's testimony would have almost certainly *caused* prejudice.

Having heard and reviewed the above testimony, the Court is of the opinion that Petitioner's claim fails upon all prongs of the ineffectiveness test.

### "Forfeiture," No Motion for Mistrial, and Curative Instruction

During the second trial, Commonwealth witnesses again noted forfeiture of the money seized at the time of Petitioner's arrest. Petitioner contends that a motion for mistrial was the only appropriate remedy. Because the merits of a motion for mistrial requires prejudice be shown, that analysis is dispositive of the first and third prongs of the test for ineffective assistance.

"When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity." Pa.R.Crim.P. 605. Failure to request a mistrial or curative

9

instruction results in waiver of that issue. *Com. v. Brown*, 359 A.2d 393, 396 (Pa. 1976).

A motion for mistrial is appropriate "where the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial." *Com. v. Jones*, 668 A.2d 491, 503 (Pa. 1995). A trial is impartial or unfair where an event forms in the jurors' "minds a *fixed bias and hostility* toward the defendant, thus *impeding their ability to weigh the evidence objectively* and render a true verdict." *Com. v. Chmiel*, 889 A.2d 501, 542 (Pa. 2005) (emphasis added). Because the prejudice must be fixed, it may be dispelled by curative measures. *Com. v. Walls*, 396 A.2d 419, 421 (Pa. Super. Ct. 1978). Though "the jury is presumed to follow the court's instructions," *Jones*, 668 A.2d at 504, the question "[w]hether the exposure of the jury to improper evidence can be cured by an instruction depends upon a consideration of all the circumstances." *Com. v. Morris*, 519 A.2d 374, 377 (Pa. 1986).

The specific exchange giving rise to the forfeiture comment occurred on cross-examination of Trooper Morrison. In attempting to undermine Petitioner's ownership of the money and drugs, Attorney Iannetti asked the Trooper whether the money had been tested for DNA. Trooper Morrison responded, "That actually went to, that's a forfeiture. Forfeiture [as in the Forfeiture Department] would have to answer that question for you." (N.T., Oct. 5, 2011, p. 44).

Rather than move for mistrial, Mr. Iannetti immediately requested a curative instruction. He reasoned that the court would be unwilling to grant a mistrial and that the instruction sufficiently dispelled any prejudice. The court's curative

10

instruction was as follows: "Ladies and gentlemen of the jury, the fact that the currency would have been submitted to asset forfeiture has no bearing upon this case. It has no bearing upon the guilt or innocence of the defendant." (N.T., Oct. 5, 2011, p. 44).

Viewing the case in its totality, we do not believe that any fixed bias resulted from Trooper Morrision's passing reference to forfeiture.[12] Furthermore, the Jury would have been, or become, fully aware that the money in question was taken during the course of Petitioner's arrest and that Petitioner attempted to hand the money off to Ms. Sykes. Those facts alone provided the jurors an objective basis upon which to judge Petitioner's guilt. Considering those facts, we cannot say that a mistrial should have resulted. Petitioner's claim thus fails on the first and third prongs of the test for ineffectiveness. Finally, the Court believes our analysis also demonstrates that Petitioner cannot meet the second prong of the ineffectiveness test, because Mr. Iannetti had a reasonable basis for his course of conduct.

### Failure to Object to the Commonwealth's Demonstrative Evidence

The only evidence available for trial of the money seized during Petitioner's arrest was an authenticated photograph of the money on the date it was seized. It showed six bundles of money, each containing ten $100.00 bills[13], for a total of $6,000.00. The photograph was admitted into evidence without objection.

---

[12] The Court's review of the transcript of Petitioner's mistrial also supports our conclusion. In that case, the forfeiture comments were elicited by the Assistant District Attorney. The resulting, relatively lengthy description of the forfeiture and the process of forfeiture were far more likely to cause the fixed bias necessary for a finding of prejudice. (See N.T., Aug. 5, 2010, p. 28-29).

[13] A common packaging method known as "a stack" in the drug trade

11

First, Petitioner contends that Mr. Iannetti should have adduced evidence that the money came from Petitioner's occupation. Given Petitioner's only known occupation, Mr. Iannetti thought that would be unhelpful. For the reasons stated above, the Court agrees.

Second, Petitioner complains that Mr. Iannetti should have objected to admission of the photograph. Mr. Iannetti testified that, when he believes an objection would be futile, his strategy is to avoid drawing additional attention to a particular piece of evidence. In the Court's experience, that practice is designed to inhibit rather than create prejudice. For that reason, we also find it to be a reasonable and non-prejudicial decision.

While it is certainly possible that picture may have helped the jurors convict Petitioner, the prejudice standard requires deprivation of a fair trial. *See Chmiel, supra; see also Kopytin v. Aschinger*, 947 A.2d 739, 747 (Pa. Super. Ct. 2008) (test for introduction of demonstrative evidence requires that the court balance its probative value against the possibility of prejudice).[14]

### No Objection to Expert Testimony

The Commonwealth presented the expert opinion testimony of PSP Corporal Dennis Ulery. As is often the case, Corporal Ulery testified that the amounts of cash and controlled substances, marijuana and cocaine[15], found on or near Petitioner

---

[14] Our review of the transcript of Petitioner's trial demonstrates that proper admission procedures were followed. (N.T., Oct. 5, 2011, p. 40).
[15] 9.5 grams and 124 grams, respectively (N.T., Oct. 5, 2011, p. 52)

12

were indicative of the intent required under the noted statutory provisions.[16] Mr. Iannetti could not recall receiving an expert report to that effect. He did not object on that basis, but attempted an impeachment based on the Corporal Ulery's willingness to testify against *any* defendant in like manner.

Pa. Rule of Criminal Procedure 573 contains both mandatory and discretionary provisions for pretrial discovery.

> *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.
>
> . . .
>
> (e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth
>
> . . .
>
> *Discretionary With the Court.*
>
> . . .
>
> (b) If an expert whom the attorney for the Commonwealth intends to call in any proceeding has not prepared a report of examination or tests, the court, upon motion, may order that the expert

---

[16] In addition, Corporal Ulery testified that the street value of the recovered cocaine was approximately $12,400.00. He further stated that the manner in which the money was packed, discussed below, is a common practice in the drug trade. (N.T., Oct. 5, 2011, p. 52-53)

13

> prepare, and that the attorney for the Commonwealth disclose, a report stating the subject matter on which the expert is expected to testify; the substance of the facts to which the expert is expected to testify; and a summary of the expert's opinions and the grounds for each opinion.

Pa. R. Crim. P 573 (emphasis original).

Plainly, Rule 573 only requires disclosure where a report has been filed and is within the Commonwealth's possession. No report was filed or otherwise within the Commonwealth's possession. Petitioner's claim is thus without merit.

### Failure to Request Standard Expert Witness Jury Instruction

Related to Corporal Ulery's testimony, Petitioner asserts that Mr. Iannetti failed to request the basic expert witness instruction provided by the Suggested Standard Jury Instructions. The Court's review of the trial transcript shows that assertion to be correct.[17]

"When a court instructs the jury, the objective is to explain to the jury how it should approach its task and the factors it should consider in reaching its verdict." *Com. v. Chambers*, 980 A.2d 35, 49 (Pa. 2009) (citation omitted). The nature of a court's instructions to the jury is "within the discretion of the court, so long as the court accurately instructs the jury on the appropriate legal principles involved." *Com. v. Willis*, 990 A.2d 773, 776 (Pa. Super. Ct. 2010) (citation omitted). A court may even choose its own words so long as the law is clearly, adequately, and accurately presented. *Com. v. Baker*, 963 A.2d 495, 507 (Pa. Super. Ct. 2008).

---

[17] The Commonwealth's Memorandum in Opposition to Defendant's PCRA Petition mistakes this Court's questions during the PCRA hearing, concerning the claim that no expert instruction was given, for a declaration that said instruction existed in the record. *See* Comm's Mem. Opp. 3.

14

The Advisory Committee note to the particular instruction Appellant faults Mr. Iannetti for not requesting, states, "there is a danger that jurors may be unduly deferential to expert opinion. The content and tenor of [this instruction] are meant to guard against this danger." Pa. S.S.J.I. § 4.10(A). Therefore, "[a] general charge on evaluating the credibility of all witnesses[18] . . . should be given *along* with this instruction." Pa. S.S.J.I. § 4.10(A) (emphasis added).

Nonetheless, we are of the opinion that this omission is of insufficient magnitude to have changed the outcome of the trial. The underlying analysis of intent is one of factors, not elements.

For example, quantity of a drug possessed can be dispositive of the intent. *See Com. v. Ratsamy*, 934 A.2d 1233, 1237 (Pa. 2007).

> [I]f the quantity[19] of the controlled substance is not dispositive as to the intent, the court may look to other factors. Other factors to consider when determining whether a defendant intended to deliver a controlled substance include the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and larges (sic) sums of cash found in possession of the defendant. *The final factor to be considered is expert testimony.* Expert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use.

*Ratsamy*, 934 A.2d at 1237-38 (emphasis added).

---

[18] We note that the trial court in this case did provide the general credibility instruction.
[19] Quantity, without more, may yield a less reliable analysis. *See Com. v. Felton*, 67 Pa. D.&C.2d 541, 546 (Pa. Com. Pl. 1974). Plainly though, that is not the case here.

15

Expert testimony is but one factor among many. Expert testimony, at best, *assists* the trier of fact in finding the intent required under the statute. Review of the record establishes that Petitioner's case presented a number of the noted factors, independent of the need for expert opinion. The trial court's instructions also show due acknowledgment of those factors. (*See* N.T., Oct. 5, 2011, pp. 75-76).

## 2. Appellate Counsel

### No Direct Contact with Petitioner

Attorney Zerega testified that as conflicts counsel she rarely has direct contact with her clients. Such was the case with Petitioner. Her reasons for this practice included the time and expense of personal contact and that either letters or telephone conversations, and review of the record, often provide sufficient bases for effective appellate briefing and argument.

Contrary to Petitioner's early assertion, Attorney Zerega did file a brief on appeal. That brief was entered into evidence as Commonwealth's "Exhibit 1." Further, Ms. Zerega testified that Petitioner's letters appeared thorough and articulate. In her judgment, those letters, along with her review of the record, were sufficient. Ms. Zerega elected *not* to include all matters complained of in Petitioner's letters, either on the basis that they were fodder for post-conviction relief or that they lacked merit. On cross, she did note that Petitioner's complaint concerning the expert jury instruction was never discussed or used as a basis for appeal.

Counsel's limited contact with a defendant will only support a claim of ineffectiveness where the functional result is a "'complete denial of counsel.'" *Com. v.*

16

*Johnson,* 51 A.3d 237, 245 (Pa. Super. Ct. 2012) *appeal denied,* 63 A.3d 1245 (Pa. 2013) (quoting *United States v. Cronic,* 466 U.S. 648, 659 (1984)). A denial is complete "where counsel has entirely failed to function as the client's advocate." *Johnson,* 51 A.3d at 245.

The Court believes that Attorney Zerega's briefing, review of Petitioner's correspondence, and demonstrated professional judgment fall far short of a complete denial of counsel.

### Refusing to Argue All Errors on Appeal

Petitioner claims Attorney Zerega failed to argue all errors complained of in his correspondence. She testified that, in her opinion, those issues not raised either lacked merit or were better suited to a PCRA petition for ineffective assistance. In Pennsylvania, the PCRA provides the preferred means for addressing allegations of ineffective assistance of counsel. *Com. v. Grant,* 813 A.2d 726, 738 (Pa. 2002).

Even assuming some of the excised issues had merit, the use of professional, legal judgment to effectuate concise, understandable arguments before appellate courts often perpetuates clients' best interests. Our Supreme Court observes, "the number of claims raised in an appeal is usually in inverse proportion to their merit and that a large number of claims raises the presumption that all are invalid." *Com. v. Ellis,* 626 A.2d 1137, 1140 (Pa. 1993); *see, e.g., Com. v. May,* 898 A.2d 559, 584 n. 5 (Pa. 2006); *Com. v. Williams,* 782 A.2d 517, 536 (Pa. 2001). Consequently, Petitioner's arguments in this regard fail the test for ineffectiveness.

## The Petition for Allowance of Appeal

We first note that there is no right to an allowance of appeal by our Supreme Court. *Com. v. Liebel*, 825 A.2d 630, 635 (Pa. 2003). However, where "*appellate counsel believes that the claims that a petitioner would raise in a PAA . . . would not be completely frivolous,* a petitioner certainly has a right to file such a petition." *Liebel, supra* (emphasis added). In other words, for PCRA purposes, a PAA only becomes a right upon counsel's judgment of its merit.

Nevertheless, counsel's option not to file a frivolous PAA, does not absolve counsel's duty of consultation with the client. For that reason, there is merit to a claim that counsel failed to advise a petitioner concerning a PAA. *See Com. v. Gadsden*, 832 A.2d 1082, 1088 (Pa. Super. Ct. 2003) (interpreting *Com. v. Liebel*, 825 A.2d 630, 634 (Pa. 2003)). "When addressing this claim, a PCRA court must consider whether counsel **adequately** and **timely** consulted with the petitioner before the filing deadline and whether counsel's failure or refusal to file a [PAA] with the Pennsylvania Supreme Court was justified." *Gadsden*, 832 A.2d at 1088 (emphasis original).

Ms. Zerega's consultation with Petitioner's mother did occur *before* expiration of the time in which to file a petition. That fact, along with her explanation that, in her opinion, there was no merit to the petition, satisfies the Court that Counsel's actions were both timely and justified, and therefore, effective.

Wherefore, we will enter the following Order:

18

IN THE COURT OF COMMON PLEAS OF
FAYETTE COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA, : CRIMINAL ACTION

v. : CASE NO. 133 OF 2009

ALBERT T. GREELEY, III, :

      Defendant/Petitioner. : JUDGE JOSEPH M. GEORGE, JR.

## ORDER

AND NOW, this 24th day of April, 2014, upon consideration of Petitioner's Amended Petition under the Post Conviction Relief Act and after hearing, the Petition is hereby DENIED.

BY THE COURT:

_____,J.
JOSEPH M. GEORGE, JR.

ATTEST:

CLERK OF COURTS

FILED
2014 APR 24 PM 3 08
JANICE SNYDER
CLERK OF COURTS
FAYETTE CO.

19

4-24-14    3-4/5
DIST/DATE

PET
DEF
DA            I
PO            I
PD
WARD        I
SHER
DA            I
ATTY Terrell   R
OC
FAyette
CTY BAR ASSOC   R